DECISION
{¶ 1} Defendant-appellant, R. Barry Andrews, appeals from the decision of the Butler County Court of Common Pleas granting a declaratory judgment to plaintiff-appellee, Butler County Joint Vocational School District Board of Education (BCJVS), and dismissing appellant's counterclaims. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} This case arose out of a contractual dispute between appellant and BCJVS. *Page 2 
Prior to January 1, 2001, appellant was the executive director of Police Training Institute, Inc. (PTI), a nonprofit corporation that provided post-basic police academy training for law enforcement officers. On January 1, 2001, PTI entered into a contract ("the agreement") with BCJVS, under which the operations of PTI would be assimilated into BCJVS's adult continuing education program through June 2003, with an option to automatically renew through June 2005.
 {¶ 3} Pursuant to the agreement, PTI assigned and transferred all of its assets to BCJVS. During the term of the agreement and any successive agreements, BCJVS retained the sole authority to offer its advanced law enforcement training programs under the name "Police Training Institute, Inc.," or "PTI." Any contracts for police training services that were entered into with PTI during the term of the agreement would be considered contracts with BCJVS. Also, pursuant to the agreement, BCJVS employed appellant, under a separate individual employment contract, as an administrator and assigned him to supervise its advanced law enforcement training program.
 {¶ 4} On or around March 1, 2004, appellant submitted a letter in his individual capacity to BCJVS Chief Executive Officer (Superintendent), Robert Sommers and Board President, Michael Oler, notifying them of his intent to resign from employment with BCJVS and terminate the agreement between PTI and BCJVS, effective June 30, 2004. On March 3, 2004, BCJVS[1] passed a resolution, on the recommendation of Superintendent Sommers, to accept appellant's resignation. The resolution provided: "BE IT RESOLVED, upon the recommendation of the Chief Executive Officer, the Board of Education accepted the resignation of the following administrative personnel. 1. Barry Andrews, Director of Police Training Institute — effective June 30, 2004." As Board members would later testify, it was not *Page 3 
the Board's intent to terminate the agreement between BCJVS and PTI.
 {¶ 5} On or around July 1, 2004, appellant began offering law enforcement training programs under the name "Police Training Institute" or "PTI." BCJVS filed a complaint seeking a declaratory judgment asserting its exclusive right to use the names, and to enjoin appellant from using the names to operate his training program.[2] Appellant filed counterclaims with a jury demand, seeking his own declaratory judgment, as well as claims for breach of employment contract, conversion, tortious interference with a contractual relationship, tortious interference with a business relationship, and unjust enrichment.
 {¶ 6} Appellant moved for summary judgment on May 19, 2005, asking the court to find in his favor on his declaratory action and breach of contract claim. Appellant argued that his March 1, 2004 letter amounted to the tender of an offer to terminate both his employment and the agreement between BCJVS and PTI. Appellant claimed that BCJVS had accepted that offer in its totality upon accepting his resignation, thereby terminating the agreement between BCJVS and PTI.
 {¶ 7} On May 27, 2005, BCJVS moved for partial judgment on the pleadings. Claiming statutory immunity as a government entity, BCJVS requested that the court dismiss appellant's counterclaims for conversion, tortious interference with a contractual relationship, and tortious interference with a business relationship, as well as appellant's claim for punitive damages.
 {¶ 8} On January 6, 2006, while both motions were still pending, appellant filed a motion for a change of venue. Appellant cited the fact that two trial judges had been forced to recuse themselves from the case due to potential conflicts of interest based on their service as board members of BCJVS. Appellant argued that it was unknown whether the current trial *Page 4 
judge served on such boards and had "serious reservations" about the appearance of impropriety if the case were not moved to Hamilton County. On January 27, 2006, the court denied appellant's motion. The court explained that it had no conflicts of interest which would prevent it from serving on the case and could therefore find no valid reason for changing the venue of the case to Hamilton County.
 {¶ 9} On July 5, 2006, the trial court granted BCJVS's motion for judgment on the pleadings and dismissed appellant's counterclaims for tortious interference and conversion, as well as appellant's claim for punitive damages. The court found that the statutory immunity provisions found in R.C. Chapter 2744 applied to BCJVS as a public school and political subdivision. Therefore, appellant's actions in intentional tort and claim for punitive damages could not stand. The court further found that genuine issues of fact remained as to appellant's declaratory action and breach of contract claim and that summary judgment was not proper on those claims. Appellant's motion for summary judgment was therefore denied.
 {¶ 10} The case proceeded to a bench trial, held July 17, 2006. The court heard testimony from board members and parties to the drafting of the agreement between BCJVS and PTI regarding the intent of the parties as to the ability of the parties to terminate the agreement. The court also received evidence and testimony from appellant regarding his breach of contract claim.
 {¶ 11} The trial court issued a decision on September 26, 2006 wherein it held that the agreement between BCJVS and PTI was valid and binding through June 30, 2005 and that appellant did not terminate that agreement by his March resignation letter. Therefore, the court held that BCJVS had exclusive rights to the use of the name PTI through June 30, 2005. Accordingly, the court rendered judgment in favor of BCJVS on its declaratory judgment action. The court further held that appellant had failed to establish his claim that BCJVS had breached his individual employment contract. The court explained that appellant *Page 5 
had failed to demonstrate that his job description or function was improperly changed amounting to a breach of contract. Finding that appellant's remaining claims depended upon a successful determination of his declaratory action, the court dismissed appellant's counterclaims. Appellant then filed this timely appeal, raising seven assignments of error for our review. For purposes of discussion we will address appellant's assignments of error out of order.
 {¶ 12} Assignment of Error No. 2:
 {¶ 13} "THAT THE TRIAL COURT ERRED, TO THE PREDJUDICE OF DEFENDANT-APPELLANT, BY DENYING HIS MOTION FOR CHANGE OF VENUE.AND THAT THE BUTLER COUNTY COMMON PLEAS COURT HAS CONSISTENTLY, THROUGHOUT THIS LITIGATION, EXHIBITED BIAS AND PREDJUDICE AGAINST DEFENDANT-APPELLANT" [sic]
 {¶ 14} In his second assignment of error, appellant contends that the trial court improperly denied his motion for change of venue. Appellant asserts that he established prima facie evidence of his inability to receive a fair and impartial trial due to bias on the part of the judges of the Butler County Court of Common Pleas, and was therefore entitled, under Civ.R. 3(C)(4), to a change of venue. We disagree.
 {¶ 15} Civ.R. 3(C)(4) provides that "[u]pon motion of any party or upon its own motion the court may transfer any action to an adjoining county within this state when it appears that a fair and impartial trial cannot be had in the county in which the suit is pending." A trial court's decision on a motion to change venue is reviewed under an abuse of discretion standard. Paulding County Hospital v. Robinson, Paulding App. No. 11-04-17, 2005-Ohio-1701, ¶ 10. Abuse of discretion implies that the trial court's decision was unreasonable, arbitrary or unconscionable. Id.
 {¶ 16} In a motion for change of venue, the moving party bears the burden of proof. Id. *Page 6 
at ¶ 11. In appellant's motion for change of venue, the only support offered for his assertion that he could not receive a fair and impartial trial in Butler County was the evidence that two prior judges had recused themselves due to conflicts of interest. Appellant then speculated that it was unknown whether any other judges had similar conflicts and stated that he had serious reservations about his ability to obtain a fair trial. Such vague speculation is insufficient to require a change of venue.
 {¶ 17} Further, Civ.R. 3(C)(4) does not encompass a change of venue based upon the alleged bias or prejudice of a trial judge. Williams v.Williams (Dec. 16, 1996), Butler App. No. CA96-01-015. Rather, the exclusive remedy under such circumstances is to file an affidavit of bias and prejudice with the Chief Justice of the Ohio Supreme Court pursuant to R.C. 2701.03. Id. As BCJVS points out, no such affidavit was filed.
 {¶ 18} Accordingly, we find that the trial court did not abuse its discretion in denying appellant's motion for change of venue. Appellant's second assignment of error is overruled.
 {¶ 19} Assignment of Error No. 3:
 {¶ 20} "THAT THE RULING OF THE TRIAL COURT IS CONTRARY TO LAW AND PRECEDENT AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 21} In his third assignment of error, appellant contends the trial court's decision with regard to the competing declaratory actions is contrary to law. Appellant asserts that the court failed to consider the testimony of his witnesses and improperly adopted BCJVS' argument with regard to the interpretation of the agreement between BCJVS and PTI.
 {¶ 22} The threshold issue decided by the trial court in its September 26, 2006 judgment entry was the effect of appellant's March 2004 resignation letter on the agreement between BCJVS and PTI. To resolve the competing declaratory actions, the trial court was required to interpret the agreement between the parties to determine whether the agreement, and the parties' rights under it, remained in effect after appellant's resignation. *Page 7 
 {¶ 23} Contract interpretation is a matter of law, and questions of law are subject to de novo review on appeal. St. Mary's v. Auglaize Cty.Bd. of Comm'rs., ___N.E.2d___, 2007-Ohio-5026, ¶ 38, citingNationwide Mut. Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107,108, 1995-Ohio-214. We will therefore review the trial court's decision as to the interpretation of the agreement between BCJVS and PTI de novo. The role of courts in examining contracts is to ascertain the intent of the parties. Id. at ¶ 18. Where the terms of a contract are not ambiguous, courts are constrained to apply the plain language of the contract. Id.
 {¶ 24} At the bench trial held July 17, 2006, the parties asserted competing interpretations of the agreement between BCJVS and PTI with regard to the ability of the parties to terminate the agreement. The dispute focused specifically on the two paragraphs of section 9 in the agreement, relating to notice of termination and automatic renewal.
 {¶ 25} Section 9 reads as follows:
 {¶ 26} "If either party wishes to terminate this Agreement, it shall notify the other party of its intention to do in writing no later than February 15, 2003. If such notification is received prior to February 15, 2003, then this contract shall be terminated at the end of the day on June 30, 2003. However, if neither party provides the notice set forth in this paragraph, then this Agreement shall automatically be extended for an additional two years.
 {¶ 27} "In addition, if for any reason R. Barry Andrews' contract with the Board shall be terminated or non-renewed, then in that event, this Agreement shall immediately become void on the same date that R. Barry Andrews' employment with the Board ends."
 {¶ 28} Section 10 of the agreement provides that "[t]he termination provisions and renewal provisions of Section 9 of this Agreement shall continue as provisions in any succeeding agreement or agreements automatically renewed by the parties. For purposes of this Agreement, automatic renewal agreements shall be specifically designed to begin on July *Page 8 
1 and run for a two-year period."
 {¶ 29} At trial, the court heard testimony from witnesses for both parties regarding the intent of the parties in drafting the agreement, and specifically the two paragraphs of section 9. BCJVS called Joe Lupo to testify. Lupo was the former superintendent of BCJVS who negotiated the contract on behalf of BCJVS. Lupo testified that the sections were intended to allow either party to terminate the agreement between BCJVS and PTI and that upon appellant leaving employment with BCJVS, he would regain control of PTI to operate his law enforcement training program. Lupo testified that he explained this to the school board prior to entering into the agreement.
 {¶ 30} However, BCJVS board member Daniel Warncke and former BCJVS board member Sharon Anderson had a different recollection with respect to Section 9 of the agreement. Warncke and Anderson testified that the parties intended for there to be a "trial period" during which point BCJVS would control the operations of PTI. If this trial period was not satisfactory for either party, they could notify the other, in writing, of their intention to terminate the agreement by February 15, 2003. However, if neither party provided the other with such notice, the agreement automatically renewed through June 30, 2005. Warncke testified that he specifically sought clarification from Lupo that, after the trial period, appellant could not simply quit his job and take the name "Police Training Institute, Inc." with him to compete against BCJVS. Warncke explained that Lupo assured him that appellant would regain the right to use the name "PTI" to operate his law enforcement training program only in the event that BCJVS terminated or nonrenewed appellant's employment contract.
 {¶ 31} Also admitted at trial as Defendant's Exhibit B were appellant's handwritten notes found on the back side of a preliminary draft of the agreement between BCJVS and *Page 9 
PTI.[3] The notes state, in relevant part, that "[a]ny rights that would inure to Board under this agreement with PTI are effectively terminated simultaneously with the termination of employment by Board of R. Barry Andrews." In its judgment entry, the court emphasized the language "termination of employment by Board," and found that the language supported the interpretation of the intention of section 9 as offered by Warncke and Anderson.
 {¶ 32} The trial court reviewed this evidence in its judgment entry and found that the interpretation of section 9 offered by Warncke and Anderson gave effect to both paragraphs of the section. The court held that the agreement had automatically renewed through June 30, 2005 when neither party provided the notice required by section 9. The court therefore found that appellant no longer had the contractual authority to terminate the agreement between BCJVS and PTI. The court found that the only way that appellant would regain the right to operate his training program under the name PTI was if his employment contract was terminated or nonrenewed, terms which have specific legal meanings as applied to school administrators under R.C. Chapter 3319. Because appellant's employment contract was not terminated or nonrenewed, the agreement between BCJVS and PTI remained valid through June 30, 2005 and appellant's March resignation letter did not trigger termination of the agreement. Therefore, the trial court held that BCJVS retained exclusive rights to operate PTI and granted judgment in favor of BCJVS on their declaratory judgment action.
 {¶ 33} After a thorough review of the agreement between BCJVS and PTI and the record provided to this court, we agree that appellant's March resignation letter did not trigger termination of the agreement between BCJVS and PTI. The plain language of section 9 in the agreement between BCJVS and PTI provides that if, for any reason, appellant's employment contract was terminated or nonrenewed, the agreement between BCJVS and *Page 10 
PTI becomes void. It is undisputed that appellant resigned, via the letter submitted to Superintendent Sommers. His resignation, coming after the February 15, 2003 "trial period" deadline, had no contractual effect on the agreement between BCJVS and PTI. The agreement, which had automatically renewed, remained in effect through June 30, 2005. BCJVS therefore retained the right to operate PTI through that date.
 {¶ 34} Further, although appellant asserts that his two-part offer was tendered and accepted as a whole by the board, we do not find that to be the case. The board's March 3, 2004 resolution clearly indicates acceptance of appellant's resignation only. Despite his intentions with his resignation letter, appellant, as an individual, would have no contractual authority to terminate an agreement between two corporate entities.
 {¶ 35} The trial court's interpretation gave meaning to the plain language of the agreement, and that interpretation was further supported by the testimony presented at the bench trial. The court therefore properly granted judgment on the declaratory action to BCJVS. Appellant's third assignment of error is overruled.
 {¶ 36} Assignment of Error No. 4:
 {¶ 37} "THAT THE TRIAL COURT ABUSED ITS DISCRETION BY BIFUCATING [sic] THE CASE AND THEN DECLARING THE CASE CLOSED BY ITS RULING ON THE QUESTION OF LAW WHEN QUESTIONS OF FACT REMAIN."
 {¶ 38} In his fourth assignment of error, appellant contends that the trial court abused its discretion in bifurcating the case, depriving him of his request for a jury trial and his ability to present additional witnesses and evidence relating to his factual claims. Appellant asserts that the trial court sua sponte bifurcated the trial to determine the issues of law at a bench trial and preserve the issues of fact for a jury trial. Appellant contends that the trial court then improperly decided and dismissed his factual claims at the bench trial and deprived him of the jury trial requested in his counterclaim. *Page 11 
 {¶ 39} BC JVS responds that the court's decision to bifurcate the issues for trial was not only reasonable, but agreed to by the parties at a pre-trial hearing. BCJVS contends that the court suggested, and the parties agreed to, a bench trial on the legal issues surrounding the parties competing declaratory actions, leaving any surviving factual issues surrounding appellant's counterclaims to be preserved for a jury trial, if necessary. Unfortunately, no such agreement appears in the record provided to this court. There is no entry regarding the court's decision to bifurcate and nothing in the partial transcript that was provided to this court.
 {¶ 40} Despite the lack of an entry regarding the decision or agreement to bifurcate the trial, we note that the decision to bifurcate a trial rests within the sole discretion of the trial court. State exrel. Rothal v. Smith, 151 Ohio App.3d 289, 2002-Ohio-7328. Civ.R. 42(B) provides that a court, "after a hearing, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, or third-party claims, or issues, always preserving inviolate the right to trial by jury." The staff notes to Civ.R. 42(B) explain that the rule gives the trial court discretionary power to order a separate trial of any claim or issue either on its own motion or on the motion of plaintiff or defendant, if to do so would further "convenience" or "avoid prejudice" or "be conducive to expedition and economy." Accordingly, an appellate court will not interfere with a trial court's decision to bifurcate a trial pursuant to Civ.R. 42(B) unless the trial court has abused its discretion. Smith at ¶ 54.
 {¶ 41} Further, questions of law are properly tried to the court. In the case at bar, determination of the competing declaratory actions rested on the court's interpretation of the agreement between BCJVS and PTI. As noted above, construction and interpretation of a contract is a question of law to be decided by the court. We therefore find no abuse of discretion in the trial court's decision to bifurcate the issues and hear the evidence and *Page 12 
arguments in support of the parties' competing declaratory judgment actions in a bench trial. Further, although the record fails to reflect whether or not the court did, in fact, conduct a hearing on the decision to bifurcate, as required by the rule, we find no error. As the threshold questions presented were questions of law relating to contract interpretation, bifurcation of the case for a determination of the questions of law at a bench trial was not only appropriate, but necessary.
 {¶ 42} To the extent that appellant argues that the trial court also improperly dismissed his factual claims, depriving him of a jury trial, we again find no error. At the bench trial, appellant presented evidence and testimony in an attempt to establish that BCJVS had breached his employment contract. Appellant asserted that changes to his job description and the operational structure of BCJVS created a work environment which made it impossible for him to operate PTI. In his written closing argument submitted to the trial court, appellant asserted that this breach of his employment contract rendered the contract between the entities void.
 {¶ 43} In its judgment entry, the court found that appellant had failed to establish a breach of his employment contract by failing to show how the changes equated to a position of lesser responsibility. The court further held that appellant had failed to demonstrate that any actions taken by BCJVS amounted to a breach of his employment contract which would have acted to void the agreement between BCJVS and PTI.
 {¶ 44} It is worth noting that "when the facts presented in a case are undisputed, whether they constitute a performance or a breach of a written contract is a question of law for the court." TravelersIndemnity Co. v. Cochrane (1951), 155 Ohio St. 305, 315, citingLuntz Ex'rs. v. Stern (1939), 135 Ohio St. 255. In the case at bar, the changes to the organizational structure of BCJVS were not disputed. However, whether these changes amounted to a breach of appellant's employment contract, rendering the agreement between *Page 13 
BCJVS and PTI void, was a question of law properly decided by the trial court. In this case, the court found that the changes asserted by appellant did not amount to a breach of appellant's employment contract and did not act to void the agreement between the entities.
 {¶ 45} The court further found appellant's remaining factual claims depended upon a favorable resolution on his declaratory judgment action. In awarding judgment to BCJVS on the declaratory judgment action, the court found that appellant's remaining claims could not survive and dismissed the counterclaims.[4]
 {¶ 46} We find no abuse of discretion in the court's decision to bifurcate the trial to determine the questions of law at a bench trial and preserve any remaining issues of fact for a jury trial. We further find no error in the court's resolution of appellant's remaining counterclaims as all questions of law were properly determined by the trial court and the court properly found that appellant's counterclaims could not stand in light of the adverse resolution of his declaratory judgment action. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 47} Assignment of Error No. 1:
 {¶ 48} "THAT THE TRIAL COURT ERRED, TO THE PREJUDICE OF DEFENDANT-APPELLANT, BY DENYING HIS MOTION FOR SUMMARY JUDGMENT AS A MATTER OF LAW."
 {¶ 49} In his first assignment of error, appellant argues that the trial court improperly denied his motion for summary judgment without journalizing any rationale for its decision.[5] Within this assignment, appellant contends that the trial court failed to articulate a rationale for *Page 14 
denying his motion for summary judgment and that such failure alone requires reversal by this court. However, it is clear from the court's entry of July 5, 2006 that the court found that questions of fact remained and that summary judgment was not proper. Generally, a clear and concise pronouncement of summary judgment is sufficient and a trial court is not required to issue a written opinion containing findings of fact and conclusions of law. Powers v. Ferro Corp., Cuyahoga App. No. 79383, 2002-Ohio-2612.
 {¶ 50} In his motion for summary judgment, appellant argued that he was entitled to judgment as a matter of law based on the plain language of the agreement between BCJVS and PTI. Appellant asserted that his two-part offer, in which he intended to both resign and terminate the contract between BCJVS and PTI, was accepted by the Board as a whole by virtue of their acceptance of his resignation.
 {¶ 51} Appellant further argued that appellee breached his employment contract in violation of R.C. 3319.02(C) by improperly changing his job description, function, and responsibilities.[6] Appellant contended that such breach constituted "non-renewal" of his employment contract and effectively terminated the agreement between BCJVS and PTI. Additionally, appellant argued that appellees breached his employment contract by rendering his ability to fulfill his contractual obligations impossible, and that he was therefore due his salary, benefits, and interest for the remainder of his employment contract.
 {¶ 52} Summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewing that evidence most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion. Civ.R. 56(C);Economy Linen *Page 15 Towel Svc, Inc. v. Mclntosh (Sept. 17, 2001), Butler App. No. CA2000-11-226. The moving party bears the initial burden of informing the court of the basis for the motion, and demonstrating the absence of a genuine issue of material fact. Dresher v. Burt, 75 Ohio St.3d 280,293, 1996-Ohio-107. "To accomplish this, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." Id. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id. A trial court's decision on a motion for summary judgment is reviewed de novo. Id. A court of appeals conducts an independent review of the record and stands in the shoes of the trial court. Id.
 {¶ 53} As described above, we agree with the trial court's finding that appellant effectively resigned via his March 2004 letter. We further agree, pursuant to the plain language of section 9, that appellant's March resignation did not trigger termination of the agreement between BCJVS and PTI. Because BCJVS did not terminate or nonrenew appellant's employment contract, appellant had no contractual authority to terminate the agreement between BCJVS and PTI. Consequently, BCJVS retained the exclusive right to operate PTI in their adult continuing education program through June 30, 2005. Although the court failed to determine this issue in appellant's motion, it is clear on review that appellant was not entitled to judgment as a matter of law in his summary judgment motion. The trial court properly denied summary judgment with regard to appellant's declaratory judgment action.
 {¶ 54} Further, the trial court properly denied summary judgment on appellant's breach of contract claim. In his brief, appellant makes a bare allegation that appellees breached his employment contract. However, appellant fails to point to any evidentiary support for his claim or demonstrate the absence of a material issue of fact. Appellant has wholly failed to demonstrate that he was entitled to judgment as a matter of law, and the trial court properly *Page 16 
denied his motion on that claim. Accordingly, appellant's first assignment of error is overruled.
 {¶ 55} Assignment of Error No. 7:
 {¶ 56} "THAT THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING, OVER DEFENDANT-APPELLANT'S OBJECTION, PLAINTIFF-APPELLEE TO IMPEACH IT'S OWN WITNESS AND THEN ADOPTING THE TESTIMONY OBTAINED IN IT'S WRITTEN RULING." [sic]
 {¶ 57} In his seventh assignment of error, appellant challenges an evidentiary ruling of the trial court during the bench trial. Appellant asserts that the trial court improperly allowed counsel for BCJVS to impeach the testimony of its own witness, over appellant's objection.
 {¶ 58} The decision to admit or exclude relevant evidence lies within the sound discretion of the trial court. State v. Rivera-Carillo, Butler App. No. CA2001-03-054, 2002-Ohio-1013, citing State v. Sage (1987),31 Ohio St.3d 173. Absent a clear abuse of that discretion, a reviewing court may not overturn a trial court's decision to admit or exclude relevant evidence. Id. As stated above, an abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id., citingState v. Adams (1980), 62 Ohio St.2d 151. Further, Evid.R. 611(C) provides that cross-examination and leading questions are permitted when a party calls "a hostile witness, an adverse party, or a witness identified with an adverse party." See State v. Snyder (Jan. 9, 1989), Butler App. No. 88-04-054.
 {¶ 59} Appellant refers to the testimony of Joe Lupo, the superintendent of BCJVS at the time that BCJVS and PTI entered into the agreement. At the bench trial, BCJVS called Lupo to testify regarding his understanding of the parties' intentions with regard to termination of the agreement. As described above, Lupo testified that the second paragraph of section 9 of the agreement was intended to allow appellant to regain rights to PTI in the event that his *Page 17 
employment ended for any reason. Appellant objected to questions posed to Lupo by counsel for BCJVS at two relevant points.
 {¶ 60} The first occurred when counsel for BCJVS was questioning Lupo regarding his departure from BCJVS, and asked Lupo to verify that, prior to his retirement, BCJVS was considering exercising a buy-out option on the remainder of his employment contract. When counsel for appellant objected on the basis of relevance, counsel for BCJVS explained that the question went to Lupo's credibility. Appellant argued that counsel had called Lupo as their own witness. Counsel for BCJVS explained that appellant intended on calling Lupo as a witness to support his case. Appellant then responded, "I can cross-examine, your honor. That's fine."
 {¶ 61} Appellant's second objection relevant to the issue he raises in this assignment of error occurred when counsel for BCJVS was questioning Lupo on his interpretation of section 9 of the agreement. When counsel for BCJVS confronted Lupo regarding his interpretation, appellant objected on the ground that counsel was impeaching his own witness. The court overruled appellant's objection.
 {¶ 62} We find no abuse of discretion in the court's decision to permit counsel for BCJVS to question Lupo in the way that he did. Although the court did not declare Lupo a hostile or adverse witness, counsel for BCJVS did point out that appellant intended to call Lupo in support of their own arguments for interpreting the agreement between the BCJVS and PTI. To the extent that counsel asked cross-examination or leading questions of Lupo, it is apparent that Lupo was established as having a relationship with appellant and was an adverse witness. Appellant's seventh assignment of error is overruled.
 {¶ 63} Assignment of Error No. 6:
 {¶ 64} "THAT THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT-APPELLANT'S RULE 41 MOTION." *Page 18 
 {¶ 65} In his sixth assignment of error, appellant argues that the trial court improperly denied his R.41 motion to dismiss.
 {¶ 66} Civ.R. 41(B)(2) provides: "Dismissal; non-jury action. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. * * *"
 {¶ 67} Civ.R. 41(B)(4) provides: "Failure other than on themerits. A dismissal for either of the following reasons shall operate as a failure otherwise than on the merits: * * * (b) failure to join a party under Civ.R. 19 or Civ.R. 19.1."
 {¶ 68} At the close of appellee's evidence at the bench trial, appellant made the following motion:
 {¶ 69} COUNSEL FOR APPELLANT: "Your Honor, at the close of the plaintiff's case, I'd move for directed verdict." * * * "Move for directed verdict pursuant to Rule 41. I'll submit it."
 {¶ 70} THE COURT: "(inaudible) which is declaratory action, so the Court is going to deny the motion."
 {¶ 71} This is the entirety of appellant's motion at trial and the record provided to this court does not reflect that appellant identified any specific basis for his assertion that appellee's had failed to show a right to relief. On appeal, however, appellant argues that appellees have failed to show a right to relief based on their failure to join PTI as a party to the litigation. Appellant argues that he may not be found individually liable for a breach of contract between two organizations and that BCJVS failed to sufficiently prove that he acted *Page 19 
in breach of the agreement which existed between BCJVS and PTI. Appellant contends that because BCJVS did not name PTI as a defendant, his Rule 41 request should have been granted.
 {¶ 72} Appellant's argument on appeal asserts that BCJVS failed to produce evidence to support a claim that appellant breached his own employment contract, and then asserts that BCJVS failed to establish that appellant breached the contract between the two corporate entities. However, it is clear from the record that the only breach of contract claim asserted against appellant by BCJVS was voluntarily dismissed by a notice filed with the court on June 30, 2006. There was no breach of contract claim remaining against appellant at the time of trial. The bench trial on July 17, 2006 was held to determine the parties' rights under the competing declaratory actions. Appellant's argument is without merit.
 {¶ 73} To the extent that appellant's Rule 41 motion, made at trial, may have been a general assertion that appellees had shown no right to relief, we find no error in the court's decision to decline to render judgment in the declaratory action until the close of all of the evidence. A trial court's decision to defer judgment will not be set aside unless shown to be an abuse of discretion. Gudorf v. Gudorf (Nov. 16, 1989), Auglaize App. No. 2-88-16, 1989 WL 138407, *2. We find no such abuse of discretion in this case. Accordingly, appellant's sixth assignment of error is overruled.
 {¶ 74} Assignment of Error No. 5:
 {¶ 75} "THAT THE TRIAL COURT, CONTRARY TO STATE LAW AND COURT DECISIONS, ERRED IN RULING THAT PLAINTFF-PLAINTIFF-APPELLEE [sic] IS IMMUNE FROM PUNITIVE DAMAGES."
 {¶ 76} In his fifth assignment of error, appellant contends that the trial court improperly found that appellee qualified for the statutory immunity provided for in R.C. Chapter 2744 and that such chapter prohibited the recovery of punitive damages. In response to appellant's *Page 20 
previous assignments of error, we have determined that appellant was not entitled to judgment in this case, and he therefore would not be entitled to damages. Accordingly, appellant's assignment of error with regard to the court's decision on the issue of punitive damages is moot.
 {¶ 77} Having found appellant's assignments of error to be without merit, we affirm the decision of the trial court.
YOUNG, P.J., WALSH and POWELL, JJ., concur.
[1] We note that in 2003, BCJVS changed its name to Butler Technology and Career Development Schools, or "Butler Tech."
[2] BCJVS also filed additional claims for tortious interference and conversion, but later voluntarily dismissed these claims.
[3] Appellant negotiated the contract on behalf of PTI as executive director of PTI.
[4] We note that, despite the fact that appellant's counterclaims for tortious interference and conversion had been previously dismissed by the court's ruling on BCJVS's motion for judgment on the pleadings, the court again dismissed those claims in this entry.
[5] A trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment. Balson v. Dodds (1980), 62 Ohio St. 2d 287.
[6] R.C. 3319.02(C) provides: "Except by mutual agreement of the parties hereto, no assistant superintendent, assistant principal, or other administrator shall be transferred during the life of the contract to a position of lesser responsibility." *Page 1